**JOHNSON et al. v. UNITED STATES.**

No. 7138.

Circuit Court of Appeals, Sixth Circuit.

April 16, 1937.

N. C. Bigelow, of Detroit, Mich., for appellants.

Fred R. Walker, of Detroit, Mich. (John C. Lehr, of Detroit, Mich., on the brief), for the United States.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

MOORMAN, Circuit Judge.

Appellants were engaged in buying and selling stocks on their own account while acting as managing officers of the First National Bank of Blissfield, Mich., a member bank of the Federal Reserve Banking System. They used the funds of the bank to finance their speculations and were charged with and convicted of a conspiracy to misapply its credits and funds and to conceal the misapplications from the board of directors and from the Comptroller of the Currency and his agents by making false entries on its books.

The offenses alleged as the objects of the conspiracy were actually committed. The method generally employed in committing them was to purchase a stock from a broker in the name of the bank for the benefit of the appellants, cause a certificate for it, with draft attached, to be forwarded to the bank, pay the draft from the funds of the bank, and then enter the payment on its books as cash in hand. These cash entries were usually carried on the books of the bank as such until the stock was sold. A variation consisted in one instance of offsetting a part of the fund used by borrowing bonds of the face value of $10,000 from Otto Tagsold, one of the directors, and the placing of them at their face value among the assets of the bank. The bonds were not worth their face value. Later, on the suggestion of a bank examiner, they were written down in value on the books of the bank. In another instance, after buying the stock and paying for it with the bank's funds, appellant Seeger executed a note to the bank for the amount used and appellants Johnson and Heinrich, with Smith, an assistant cashier, gave their note for a like amount to Seeger's wife. At one time they bought American Super Power stock and paid for it with funds of the bank, offsetting the payment by a cash entry of an equal amount. This item was carried as cash on the books of the bank until the stock was sold and then was paid in from the proceeds of the sale, but the profits made on the stock were retained by the appellants. In each of these transactions the bank was deprived of the use of its funds. In none of them was its assets increased or was it paid any interest on the funds used in buying and carrying the stock. The Tagsold bonds, as stated, when placed in the bank, were worth less than par and, were later written down in value. On this transaction it would seem that the bank sustained a permanent loss of capital. While in some cases, perhaps most of them, the fund represented by the "cash item" was actually paid in when the stock was sold, nothing was paid for its use and the bank lost the interest thereon.

The appellants contend that the court should have directed the jury to return verdicts of not guilty on the ground that the acts proved by the government were lawful and there was no proof of the use of any unlawful means in committing them. They say that it was the custom of the bank to pay drafts for its customers and carry the payments on its books as cash items, and that all they did was to follow that custom. Witnesses for the government denied that such a custom existed among national banks. Certainly there is no authority in the national banking laws for a bank to pay the drafts of its customers and carry the payments on its books as cash in hand. The entries here involved were carried for indefinite periods by authority and direction of the appellants, who were officers in charge of the bank and were in the position of trustees of its funds. If it be true that a national bank sometimes does pay a draft on one of its ordinary customers and carry the payment on its books as a cash item for a short time until the customer can repay it, that fact cannot serve to establish a lawful precedent for a concealed use by officers of a bank of its funds in carrying on their personal speculations. Such proof of the custom, too, as was offered by appellants did not

reach the practice here involved of using the bank's name in the drafts. The use of the bank's funds by the appellants was plainly a misapplication within the meaning of the statute. 12 U.S.C.A. § 592. The intent to misapply them is inferable from the acts themselves. That the intent was common to all of the appellants appears without question from the proofs. Furthermore, the indictment charged a conspiracy among them to commit an offense against the United States by the making of false entries on the books of the bank with intent and design to injure and defraud the bank and to deceive the Comptroller of the Currency and his agents. They did in fact make false entries in placing the cash entries on the records of the bank. These acts were performed, too, under a common agreement. Indeed, appellants admitted to a government investigator that they all had acted together.

 Complaint is made of the admission in evidence of certain documents showing the transactions between the appellants and the brokers from whom the stocks were bought. One of these documents, Exhibit No. 2, is the brokerage account of appellants carried in the name of the bank with the brokerage firm of Snyder-Wilson Company. It consists of ledger sheets of the brokerage firm and was objected to on the ground that it was not identified by the person who made the entries. It is not necessary to the admissibility in evidence of a memorandum or note of a transaction that it be identified by the person who made the original entry. If it is the first permanent record, the identification may be made by the one who has the custody or control of it or had general authority over the making of it. This exhibit is the first permanent record of the transactions which it purports to disclose and was identified as such by the floor manager and junior partner of the brokerage firm. The identification, in our opinion, was sufficient. Robilio v. United States, 291 F. 975 (C.C.A.6); Billingsley v. United States, 274 F. 86 (C.C.A.6); Somberg v. United States, 71 F.(2d) 637 (C.C.A.7); Cub Fork Coal Co. v. Fairmont Glass Co.,

19 F.(2d) 273 (C.C.A.7); St. Paul Fire & Marine Ins. Co. v. American Food Products Co., 21 F.(2d) 733 (C.C.A.8). Exhibit 10 is the permanent record of the account of the appellants in the name of the bank with Bell & Beckwith, brokers, of Toledo, Ohio. The identification of this was also sufficient to admit it in evidence. Exhibit 23 consists of two ledger sheets from the records of the First National Bank of Commerce of Adrian, Mich. That bank was a correspondent of the Blissfield Bank. The exhibit was offered in evidence apparently to show the payment by the Bank of Commerce of a check of the Blissfield Bank drawn by Johnson, its cashier. The check itself was in evidence, and obviously the appellants were not prejudiced by the admission of the ledger sheets indicating a fact that was otherwise proved.

 Exhibit 42 is a report of a bank examiner who examined the bank about the time the Tagsold bonds were delivered to it. The evidence shows that it was received and discussed at a meeting of the board of directors. It was identified as a document found among the records of the bank and was offered in evidence during the cross-examination of Moore, a former teller of the bank. The court permitted its provisional introduction over the objection of appellants. It was not, however, finally admitted and was never read to the jury. In view of those facts, appellants were manifestly not prejudiced by its provisional reception. At the close of the government's case appellants moved to exclude it and the court reserved its ruling on the motion. No ruling was ever made on the motion and no objection made by the appellants to the failure of the court to rule on it. On that point there is, of course, no reviewable question presented. Fidelity & Casualty Co. v. Thompson, 154 F. 484, 11 L.R.A.(N.S.) 1069, 12 Ann.Cas. 181 (C.C. A.8); Breedin v. United States, 73 F.(2d) 778 (C.C.A.4).

The other contentions made by the appellants are too plainly without merit to require discussion.

Judgments affirmed.