35 C.C.P.A.(Patents)

## SENKUS v. JOHNSTON.

### Patent Appeal No. 5419.

Court of Customs and Patent Appeals.
March 2, 1948.

Henry C. Parker, of Washington, D. C., for appellant.

Wm. P. Spielman, of Stamford, Conn. (Edmund H. Parry, Jr., of Washington, D. C., of counsel), for appellee.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners awarding priority of invention of the subject matter of the seven counts in issue to appellee. Two applications are involved. Appellant's application, serial No. 441,021, was filed April 29, 1942. The application of appellee, serial No. 413,652, was filed October 4, 1941. Appellee being the senior party, appellant had the burden of proving priority of invention by a preponderance of the evidence. Appellee took no testimony and, therefore, is confined for conception and constructive reduction to practice as of his filing date. Appellant took testimony.

Count 1 is sufficiently illustrative of the involved subject matter and reads as follows:

"1. The condensation product of an aldehyde with a polyhydroxy alkylamine of the general formula

$$CH_2OH$$
$$|$$
$$R - C - NH_2$$
$$|$$
$$CH_2OH$$

where R is a member of the group consisting of H, alkyl and alkylol radicals said condensation product having the general formula:

$$CH_2 - O$$
$$| \qquad CHR'$$
$$R - C - N$$
$$| \qquad CHR'$$
$$CH_2 - O$$

in which R is as defined above and R' is the residue of the aldehyde employed in the reaction."

The subject matter in issue involves a process of producing certain bicyclic compounds and the compounds resulting from the process of reacting aldehyde, such as formaldehyde with a polyhydroxy alkylamine such as 2-amino-2-methyl-1, 3-propanediol or trimethylolaminomethane, sometimes denominated tris(hydroxymethyl)-aminomethane. The counts are adequately described in the decision of the board as follows: "Count 1, is the broadest product count in that R is the Markush 'group consisting of H, alkyl and alkylol radicals' and there is no restriction with respect to the aldehyde. Count 2 is a more limited product claim retaining the Markush definition for R but limited to formaldehyde as the aldehyde. Count 4 is a still more limited product claim wherein R is defined as an alkylol radical and the aldehyde is restricted to formaldehyde. In product count 5, R is specifically the hydroxymethyl or methylol radical, $CH_2OH$—, and the aldehyde is formaldehyde. Product count 7 is also a specific claim but R is the methyl radical, $CH_3$—, and the aldehyde is again formaldehyde. Count 6 is more specific of the two process claims, being limited to formaldehyde and tris(hydroxymethyl) aminomethane, that is, the R which appears in count 1 is restricted to the hydroxymethyl radical. Count 3 is a broader method claim wherein the R of the polyhydroxy alkylamine is in the Markush form found in count 1, but the aldehyde is restricted to formaldehyde. It will be noted that process count 3 corresponds to product count 2 and that process count 6 corresponds to product count 5."

Because the issues are questions of law, it is not necessary to discuss the technical facts involved.

It was stipulated by the parties "that analytical data sheet records signed by analysts now in defense plants or the armed services be admissable as evidence of the facts therein described, without testimony by said analysts" and further stipulated "that the structures of the compounds involved in the counts in interference shall be considered to be as disclosed, and that said structures need not be proved."

Appellee conceded before the board that appellant conceived the invention defined by each of the counts some time between June and December 1930.

The board awarded priority of invention of the subject matter of the counts to appellee for the reason that, in its opinion, the testimony of appellant had not been sufficiently corroborated. It will not be necessary to discuss that testimony and the great number of supporting exhibits for the reason that appellee in his brief states that appellant "did everything that could be expected of a research chemist in the way of working out the subject matter of his invention and establising the structural formulas of the compounds involved, and in reporting the results to his associates and superiors."

■ Appellant, in addition to his oral testimony, placed in evidence many entries from his personal notebooks, and reports and letters bearing upon the invention which he sent to others, all of which were of value to establish his conception of the invention. However the notebook entries and reports to others are not sufficient to establish corroboration for the reason that they are merely self-serving in their character. Under the long established rule of law there must be independent corroboration of all the essential factors concerned in reduction to practice. Patterson et al. v. Clements et al. 136 F.2d 1002, 30 C.C.P.A., Patents, 1262; Crane et al. v. Carlson, 125 F.2d 709, 29 C.C.P.A., Patents, 879; Collins v. Olsen, 102 F.2d 828, 26 C.C.P.A., Patents, 1017; Israel v. Cresswell, Cust. & Pat.App., 166 F.2d 153.

Of appellant's eleven witnesses only two gave testimony intended to corroborate the testimony of appellant in actually reducing his invention to practice. One witness testified that he was employed by Commercial Solvents Corporation, in which company appellant is a research chemist. The witness was assigned to appellant's laboratory in the later part of June 1929. He testified that he knew some of appellant's experiments were concerned with the reaction of the tris(hydroxymethyl)aminomethane and formaldehyde. He stated that he had been in the room, at no specified time, when appellant had mixed tris(hydroxymethyl)aminomethane and formaldehyde, but his testimony was merely that he recalled seeing appellant weigh into a reaction flask tris(hydroxymethyl)

aminomethane and at other times, mentioning no dates, he noticed the pungent odor of formaldehyde when the reaction mixture was distilled. His testimony we think is entirely too uncertain and vague to sufficiently corroborate the testimony of appellant. He further testified that he saw a white crystalline product, which he said he understood was prepared from those two materials.

■ Clearly that testimony cannot be considered as sufficiently corroborating an actual reduction to practice of the invention by appellant. He did not point out one specific experiment which he saw carried through and did not state that he observed at any one time, in proper consecutive order, the weighing out of tris(hydroxymethyl)aminomethane, the mixing of the formula, and the preparation of the crystalline product. Therefore, we hold that his testimony did not extend to the limitations contained in the counts in interference. George v. Karsel, 111 F.2d 148, 27 C.C.P.A., Patents, 1063; Crane et al. v. Carlson, supra, Lichtenwalter v. Caron, 158 F.2d 1011, 34 C.C.P.A., Patents, 792.

■ The only other witness whose testimony was intended to be corroborative of appellant's own evidence stated that at the suggestion of appellant he mixed 2-amino-2-methyl-1, 3-propanediol with formaldehyde, and then mixed the reaction product with cocoanut oil fatty acids, and tested the final product as a wetting agent. Appellant contends that that operation by the witness constitutes an independent reduction to practice of the invention by an agent of the inventor. There is no evidence that the product resulting from the reaction mixture or the final product was analyzed. There is nothing to show that the witness or any one else really carried out the process of appellant and produced the product defined by the counts. The witness was not attempting to do anything but produce a substance different from that called for by the counts. Therefore, in our opinion, the board correctly ruled that appellant's evidence had not been sufficiently corroborated by that witness to establish an actual reduction to practice. It is not necessary to discuss the part of the board's

opinion in which it noted that the evidence of the later referred to witness relates only to the subject matter of counts 2, 3, and 7.

■ Appellant contends here that the board erred in its action "relating to the necessity for visual observation by a corroborating witness of a process conducted by an inventor, holding in effect that such a witness must testify that he observed on a specific date at least one specific experiment from start to finish with each process step conducted in consecutive order and with the ultimate preparation of a white crystalline product." It is indeed difficult to understand such contention. In order that a corroborating witness be properly equipped to give testimony in a case such as this, he surely must see the operation of the process and have personal knowledge of the product. We can see no error in the holding complained of.

Appellant further contends that the board ignored what is said to be substantial corroborative evidence such as analyses of the products made by independent analysts, utility tests conducted on the new products such as reports, letters, etc., reporting and discussing the products.

Appellant contends that that data in connection with the tests constitutes sufficient corroborative evidence when considered in connection with the other evidence.

Strangely enough appellee seems to agree with the contention of appellant with respect to the corroborating effect of analytical reports, analyses of preparations, and so forth, stating as follows: "One suggested method of resolving this question would be to start with the analytical reports. Most industrial laboratories maintain an independent analytical section, whose duties are confined to the analysis of preparations received from the entire laboratory. Ordinarily the supposed composition is given to the analyst along with each sample so that he may know the correct analytical method to apply. Also, the order for the analysis usually specifies the particular elements to be determined such as carbon, hydrogen, nitrogen, etc.

It would seem that one or more analyses of this kind, made on a product identified by the laboratory notebook records of the inventor, should be considered at least as good a corroboration as the independent testing of a mechanical invention by a corroborating witness."

We think the rule of law in patent jurisprudence with respect to clear independent corroborating evidence is fair and wholesome, and we adhere to the established doctrine as is set forth in the several cases hereinabove cited on that point.

■ Large industrial concerns employing research scientists, such as appellant, are constantly seeking patentable new processes for old substances, patentable new substances, and in general patentable improvement in the art wherein the researchers are engaged. We think it is a matter of common knowledge that such industrial concerns, as well as the research scientists, are "patentwise." If they are not, they should be. We do not think that any material burden is imposed on any applicant for a patent to see to it that all of his work has been properly disclosed and explained to others who may be called as witnesses to corroborate the applicant's or inventor's evidence. Indeed, if we were to relax the sound rule now existing with respect to corroboration merely because of the research systems in large industrial concerns, it would result, in our opinion, in having no corroboration rule at all as far as large industrial business is concerned, but would still require the present rule of corroboration with respect to others.

We have examined with care the brief of appellant and the cases cited in support of his contentions, but find nothing therein to make those cases applicable to the record facts.

■ The decision of the Board of Interference Examiners is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.