36 C.C.P.A.(Patents)

## TETER v. KEARBY.

Patent Appeals No. 5439.

United States Court of Customs and Patent Appeals.

June 1, 1948.

Rehearing Denied Sept. 30, 1948.

Pennie, Edmonds, Morton & Barrows, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

George J. Silhavy, of New York City (J. G. McKean, of Oakland, Cal., Edward J. Mahler, of Westfield, N. Y., and W. F. Weigester, of Washington, D. C., of counsel), for appellee.

Before GARRETT, Chief Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the subject matter of all of the counts, four in number, to appellee.

The interference involves an application of appellee, serial No. 512,778, filed December 3, 1943 and a patent of appellant, No. 2, 330,640, dated September 28, 1943 on an application, serial No. 389,415, filed April 19, 1941. The involved counts were copied by appellee from the patent of appellant and read as follows:

"1. Process for cracking petroleum oil to produce motor fuel having high anti-knock properties comprising intimately contacting the oil to be cracked while at a cracking temperature with a metal oxide catalyst in the form of an aerogel.

"2. Process for cracking petroleum oil to produce motor fuel having high anti-knock properties comprising intimately contacting the oil to be cracked while at a cracking temperature with a catalyst composed of $SiO_2$ and $Al_2O_3$ in the form of an aerogel.

"3. Process for cracking petroleum oil to produce motor fuel having high anti-knock properties comprising heating the oil to be cracked to a cracking temperature while having intimately dispersed therein a metal oxide catalyst in the form of an aerogel.

"4. In the method of producing motor fuel having high anti-knock properties by cracking petroleum oil wherein a metal oxide catalyst at least a substantial part of which has been regenerated is dispersed through the oil, the oil-catalyst mixture subjected to cracking treatment and the used catalyst separated from the oil regenerated and returned to the cracking treatment, the improvement comprising dispersing the metal oxide catalyst in the oil in the form of an aerogel."

As indicated by the above quoted counts, the subject matter of the interference relates to a process for cracking petroleum oil in the presence of a metal oxide catalyst "in the form of an aerogel" for the purpose of producing gasoline possessing high anti-knock properties.

On December 30, 1939, appellee and a party named Reeves filed a joint application, serial No. 311,936, disclosing the subject matter involved herein. That application subsequently matured into patent No. 2,317,803, dated April 27, 1943. Prior to the issuance of that patent Reeves and Kearby filed a division thereof, serial No. 451,220, dated July 16, 1942. That divisional application matured into patent No. 2,348,647 on May 9, 1944. Prior to the issuance of the second patent, to wit on November 5, 1943, but after the case was closed to further prosecution before the examiner, Kearby and Reeves copied the involved claims from the Teter patent seeking by amendment to add those claims to their second application for the purpose of bringing on an interference with the patent of appellant. The examiner refused to enter the amendment for the stated reason that it was directed to subject matter divisible from that already allowed in the second joint application.

The joint applicants were then advised by the examiner that their remedy was to file a divisional application containing the claims of appellant's patent. Accordingly on December 3, 1943, and prior to the issuance of their second application as a patent, Reeves and Kearby filed a third joint application, serial No. 512, 778, containing the copied patent claims which constitute the counts herein. The present interference between the third joint application and the patent of appellant was declared on December 30, 1943. All three of the joint applications are identical in their disclo-

sures and verbatim copies, each of the other, except for the claims.

On January 29, 1944, the parties stipulated that the time for filing preliminary statements, which had been set for January 31, 1944, be extended for a period of thirty days. Accordingly the Examiner of Interferences extended the time until March 2, 1944. On February 29, 1944 another stipulation was filed requesting a further extension of thirty days after March 2, 1944. In that stipulation it was stated that from a preliminary inspection of the records of Reeves and Kearby it was discovered that the invention as defined in the counts was the sole invention of appellee Kearby rather than a joint invention, and that, therefore, it would be necessary to convert the joint application, serial No. 512,778, into the sole application of appellee Kearby. It is stated in the stipulation that the extension of time was for the purpose of filing the necessary papers for converting the joint application into a sole application prior to the filing of preliminary statements. The Examiner of Interferences on March 3, 1944 extended the time within which preliminary statements might be filed to April 3, 1944.

On March 2, 1944, counsel for the joint applicants moved that the interference be suspended and that the application be remanded to the Primary Examiner for the purpose of converting the joint application into a sole application of Kearby and that the interference be reformed accordingly. In the motion it was stated that the necessary documents for such change were being filed on the date of the motion. On March 8, 1944, the Examiner of Interferences granted the motion and remanded the case to the Primary Examiner for the purpose of considering the question of converting the joint application to a sole application and reforming the interference. The Examiner of Interferences suspended the proceeding.

It appears from a letter of the Examiner of Interferences, dated June 2, 1944, that the motion period expired July 3, 1944; that testimony in chief for appellant was to close September 5, 1944; that testimony of appellee Kearby was to close October 5, 1944; that rebuttal testimony of appellant was to close October 20, 1944; and that final hearing would take place on January 5, 1945.

On March 1, 1944, the joint applicant Reeves filed an affidavit in which he stated that since the filing of the joint application, serial No. 512,778, he had discovered that he was not a joint inventor of the subject matter claimed in that application, and, therefore, he disclaimed that he was such inventor with appellee Kearby, and that he filed that application as a joint inventor through mistake and without fraudulent intent. On the same date appellee Kearby filed an affidavit stating that he had been a party to filing that application as a joint inventor through mistake, inadvertence, and without fraudulent intent, and that since filing that application he discovered that he was the sole inventor of the invention claimed in the application. Appellee Kearby also filed a new oath stating that his sole application, serial No. 512,778, was a division of the joint application, serial No. 451,220, which in turn was a division of joint application, serial No. 311,936.

In view of those affidavits, the involved application was converted to the sole application of appellee Kearby. The interference was then reformed, the counts remaining the same. By reason of the proceedings hereinbefore set out, Kearby was the senior party.

On June 29, 1944, counsel for appellant filed a motion praying that the burden of proof be shifted to make him the senior party, and a motion to dissolve the interference. On July 21, 1944, appellee filed a motion to add counts to the interference. All three motions were denied in a decision of the Primary Examiner, dated October 14, 1944.

On October 25, 1944, counsel for appellant petitioned the Commissioner of Patents in the exercise of his supervisory authority to review the decision denying his motions. On November 3, 1944, the Commissioner of Patents dismissed the petition of appellant stating that the questions raised in the petition were reviewable in the interference proceeding.

In his motion to shift the burden of proof, appellant contended that the sole application of Kearby was not entitled to the filing date of the first joint application of Reeves and Kearby. Substantially the same contention was made in appellant's motion to dissolve. It is obvious that, unless appellee is awarded the filing date of the original joint application, serial No. 311,936, he can not prevail.

Appellant, in addition to his contention that appellee was not entitled to the filing date of the first joint application, took testimony. Appellee took no testimony and was held to be entitled to no date earlier than the date of the earliest joint application of Reeves and Kearby, December 30, 1939.

The Board of Interference Examiners hold that appellant had conceived the invention defined in all of the counts prior to December 30, 1939, but that he did not prove reduction of the invention to practice prior to his filing date, and also that appellant did not prove exercise of reasonable diligence in reducing the invention to practice during the critical period—from just prior to December 30, 1939 to his filing date. The board, as did the Primary Examiner, held that appellee was entitled to rely upon the date of December 30, 1939 as a constructive reduction to practice of the invention defined by the involved counts.

Counsel for appellant in their brief before us state that there are two important issues involved and also a number of subsidiary issues. It is vigorously contended that appellee is not entitled to the filing date of the first Reeves and Kearby application for a constructive reduction to practice. It is also strongly contended that the record on behalf of appellant adequately establishes actual reduction to practice of the subject matter of the broad counts 1 and 2 prior to appellee's earliest available date. It is argued as a subsidiary issue that if the latter question be answered in the affirmative, then the question arises as to whether or not experimental operation relied upon by appellant as a reduction to practice of the subject matter of counts 1 and 2 also comply with the terms of count 3, and, therefore, are sufficient to establish a reduction to practice of that count as well as counts 1 and 2. A further subsidiary question is posed by appellant as to whether certain operations described by one of the witnesses as having been performed prior to the fall of 1940 resulted in a reduction to practice of the subject matter of count 4 as well as count 3, and whether appellant had been diligent in completing his reduction to practice.

While appellant appears to agree with the doctrine with respect to converting joint to sole applications as laid down in the case of In re Roberts, 49 App.D.C. 250, 263 F. 646, he contends that the conditions set forth therein with respect to such conversion are not satisfied by the action of appellee, and that, therefore, the sole application of appellee is not entitled to the benefit of the filing date of December 30, 1939.

It is admitted that the doctrine in Re Roberts, supra, is applicable where under certain circumstances a sole inventor may properly secure the benefit of the date of an earlier filed joint application.

■ It is clear that the second application of Reeves and Kearby is a true division of their original application, and as such is entitled to the benefit of the date of the first application. It is also obvious that the involved application, when it was filed as the joint application of Reeves and Kearby, was likewise a true division of the second joint application. Seemingly appellant raises no question concerning the relationship of the three joint applications. His contention is that when the involved application was converted from a joint to a sole application that in some manner—which has not been explained and which we can not understand—the involved application lost its character as a divisional application.

■ It is well settled law that a continuing application by the same inventor is entitled to the date of an earlier filed application if the subject matter is continued before the Patent Office. It is immaterial that the subject matter in the last continuing case is claimed for the first time and that no previous claim was made of the subject matter in the earlier filed case. Benedict v. Menninger, 64 F.2d 1001,

20 C.C.P.A., Patents, 1138, and Arnold v. Langmuir, 36 F.2d 834, 17 C.C.P.A., Patents, 756.

Appellant appears to contend that the holdings in those cases must be disregarded if we affirm the decision of the board, holding that appellee is entitled to the filing date of the earliest joint application. We can not agree with such contention. We can see no reason why under the facts in this case appellee may not be properly awarded as his earliest date for constructive reduction to practice, December 30, 1939. No case has been cited to us nor have we been able to find any that would sustain such contention. It has been held by the Board of Appeals that a sole application can be a division of a joint application if the latter contained an invention which was solely that of one of the joint applicants. Ex parte Whitfield, 56 U.S.P.Q. 425.

■ Where one invention which is clearly disclosed in an application is not there claimed, but is subsequently claimed in a co-pending application by the same applicant, the first filing will be deemed a constructive reduction to practice and the later application will be given the filing date of the earlier one. Chapman et al. v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491. Such right of benefit from a disclosure of an earlier application was asserted in the case of Benedict v. Menninger, supra.

In the case of In re Perrin, 142 F.2d 277, 31 C.C.P.A., Patents, 1041, we affirmed the doctrine of the case of In re Roberts, supra, that a sole application disclosing and claiming the subject matter of an earlier joint application may be entitled to the benefit of the date of the joint application.

When the joint applicants filed the present application, they were jointly claiming the subject matter thereof. Subsequently when the joint application was converted to the sole application of Kearby, he as an individual was claiming the same subject matter as was claimed in the joint application. We think such conversion and the claiming of the same subject matter of the joint application completely satisfies one of the conditions set out in the case of In

re Roberts, supra. The last joint application was in fact a division of the second joint application which in turn was a true division of the original joint application. It must be remembered that the divisional applications disclosed and claimed distinct and separate inventions from those claimed in the first joint application although all those inventions were sufficiently disclosed therein. It was not necessary in the filing of either of the first two joint applications to assert claims to the claimed subject matter of the third joint application. In fact since division was required, it could not be done.

As far as we are informed by the cited cases it would seem to be immaterial when the sole invention was first claimed in the Patent Office. In re Roberts, supra.

In the case of Godfrey v. Eames, 1 Wall. 317, 17 L.Ed. 684, cited in the Roberts case, supra, it was held that, "where an applicant for a patent elects to withdraw his application for the purpose of filing a new application, the two applications are to be considered as parts of the same transaction, constituting one continuous application." Similarly in the situation before us, we can not see why the three joint applications of Reeves and Kearby should not be considered as parts of the same transaction making one continuous application. Since the first joint divisional application was made in due time prior to the issuance of a patent on the original application, and the second joint divisional application was made during the permitted time prior to the issuance of the patent on the first divisional application, it is immaterial that the first two joint applications matured into patents.

■ It is true that one of the conditions under which a sole application can properly have the benefit of the date of the earlier filed joint application is that the sole applicant must have acted with reasonable diligence in order to correct his mistake. In re Roberts, supra; Manny v. Garlick et al., 135 F.2d 757, 30 C.C.P.A., Patents, 1008; Manny v. Garlick et al., 75 U.S.P.Q. 215. In the latter cited case appears a very complete analysis of cited cases with respect to diligence in converting joint to sole applications.

In our opinion appellee acted with reasonable diligence to correct his mistake. The affidavit of Reeves and that of Kearby were filed March 1, 1944. The joint application of Reeves and Kearby, serial No. 512,778, was filed December 3, 1943. The interference was declared December 30, 1943. The time for filing preliminary statements was set to expire March 2, 1944, and on February 29, 1944 the parties by stipulation asked for an extension of time within which to file preliminary statements for the reason it had been discovered that the joint application was filed through a mistake.

■ It will be noted that as early as March 1, 1944, which was prior to the time fixed for filing preliminary statements, Reeves and Kearby properly took steps to rectify their error. There is nothing in the record from which we can infer that the joint applicants knew of any mistake before the time set for filing preliminary statements. The preparation for filing such statements involves an examination of proper facts and procurable evidence relating to the acts of the parties and to dates available in establishing priority of invention. If mistakes had been made, it seems to us that during such examination they would in all probability be then discovered. The chronology hereinbefore set out convinces us that the joint applicants acted promptly to correct their error, and we hold, as was held below, that reasonable diligence was exercised.

A final condition set out in the case of In re Roberts, supra, [46 App.D.C. 250, 263 F. 646], is that one who seeks to convert from a joint to a sole application "must * * * assume the burden of establishing his good faith." The good faith of the joint applicants in filing their joint applications does not appear to be questioned by appellant. The affidavit of appellee and that of Reeves both state that the joint filing was made through mistake and without fraudulent intent. We find nothing in the record to indicate that appellee did not act in good faith.

■ For the reason that in our opinion appellee acted in good faith and with diligence to convert the joint application of Reeves and Kearby to the sole application of Kearby containing the same disclosure and claims as that joint application, under the doctrine of In re Roberts, supra, the sole application is entitled to the benefit of the date of that joint application, and since that application is clearly entitled to the filing date of the first joint application, the sole application of appellee is entitled to that earliest filing date.

■ It is argued by appellant that because appellee did not take testimony, his failure to do so indicates, in some way or another not set out, a lack of good faith. It is fundamental that neither party is compelled to take testimony in an interference proceeding, and it is just as fundamental that after the junior party has made his record in chief that if the senior party upon an examination thereof is of opinion that the record made by the junior party is not sufficient to establish priority, there is no compulsion upon the senior party to present any evidence whatever. He can properly rely upon his filing date.

With respect to the motion of appellant to dissolve the interference for the alleged reason that the appellee had not filed a proper oath, an examination of the oath discloses that appellee states that his present application is a division of the prior joint application, serial No. 311,936, and that there was no publication, public use, or sale of his invention prior to his discovery or invention thereof for more than two years prior to the filing of said application, serial No. 311,936. The contention of appellant is that appellee can not rely upon the filing date of the earliest filed joint application because it is not a division thereof. For the same reasons given with respect to our holding on appellant's motion to shift the burden of proof, we agree with the tribunals of the Patent Office that the motion to dissolve was properly denied.

It is agreed that with the exception of the limitation "in the form of an aerogel" each of the claims defines an old and long known principle used in cracking petroleum oil to produce a motor fuel possessing desirable anti-knock properties.

The broadest counts are 1 and 2, count 2 being more specific than count 1 in that it specifies the composition of the catalyst.

Count 3 is specific to the process of having a metal oxide catalyst intimately dispersed in the oil to be heated to a cracking temperature.

Count 4 is similar to count 3 with the addition that it contains the limitation that the catalyst after use and separation from the oil is regenerated and returned to the cracking treatment.

Counts 1 and 2 apparently include the cracking process of the other two counts, and also the method in which a fixed-bed form of catalyst is employed. Counts 3 and 4 do not include the use of the latter form of catalyst.

It appears that metal oxide catalyst, particularly those consisting of the oxide of silica, $SiO_2$, and the oxide of aluminum, $Al_2O_3$, have long been known in the art of cracking petroleum oil for the production of anti-knock motor fuel. Such material is found in nature as in fuller's earth, but similar catalysts were made in the form of synthetically prepared gels known to the art as "aquagels." The synthetic aquagels were known to be more effective as catalysts in the involved art than those occurring in nature.

The type of catalyst mentioned in the counts and known as "aerogel" is prepared in the same method as that employed in producing "aquagel," except for the manner in which liquid is removed from the gel as initially formed. In the synthesis it appears that synthetic silica and alumina in proper proportions for the desired products are mixed in aqueous solution. The mixture is then held at a low temperature until it sets as a gel. It is then washed with water to remove, as far as possible, impurities such as free sodium and chlorine ions. After washing, the gel contains a great quantity of water, and if the water is removed by evaporation, the gel shrinks to about one fifth its original volume so that the eventual calcined product, which is known as aquagel, will be relatively dense. If instead of evaporating the water, the gel is thoroughly washed with a volatile liquid, such as methyl alcohol or acetone, the water

content is displaced by the more volatile liquid. The gel is then heated in a pressure vessel at such a high temperature that the volatile liquid is almost instantaneously converted into gas. When the gas passes off, a dry gel remains which has shrunk to only about 80 percent of the volume of the water filled gel, so that the final calcine product has a lower density and a higher degree of porosity than the aquagel. After having been dried and broken into pieces, the aerogel may be placed in a chamber forming a "catalyst bed" through which the petroleum to be cracked is passed at a cracking temperature, or the substance may be finely ground and mixed with the oil to be cracked in order to form a slurry which may then be passed through a heating zone in which the mixture is heated to the cracking temperature.

Appellant is a chemist employed by the Sinclair Refining Company, assignee of his involved patent. He had worked for the company for over ten years, starting as a research chemist, and during the time pertinent to his activities with respect to his work on aerogels, he occupied a supervisory capacity and had not actually done laboratory work. He, as well as several other employees of the company, testified, and there was offered in evidence several reports of experiments, data sheets, and correspondence pertaining to oil cracking with the use of metal oxide catalysts.

In his preliminary statement, appellant alleged conception of the invention defined by all of the counts as of February 15, 1939, and disclosure to others on the same date. He alleged reduction to practice of the process defined in counts 1, 2, and 3 as of March 1, 1939 together with a contemporaneous record of such reduction on the same date. With respect to count 4, appellant alleged that the invention defined therein was described in writing on November 29, 1939, and reduced to practice on May 22, 1940.

The Board of Interference Examiners properly held that appellant conceived the invention as defined in all of the counts by at least December 27, 1939. Therefore, it will not be necessary to discuss the record with respect to conception.

It appears from the testimony of appellant that he conceived the idea of employing aerogels as cracking catalysts before March 1939, and that he instructed two chemists in the employ of the Sinclair Company to make such catalysts, which were said to have been prepared with an aerogel of 90 mol percent silica and 10 mol percent alumina. The work was said to have been started on February 8, 1939 and completed March 1 of that year.

In support of appellant's testimony concerning his tests and results thereof, in which the aerogels were used, reports and notebook pages of the two chemists were placed in evidence. The chemists making the reports were not called as witnesses, and there is nothing in the record to indicate that their attendance had been sought. While the reports supported the testimony of appellant, they are not sufficient of themselves to prove the composition of the gels used in the tests nor the process of preparing the catalysts said to be used in the cracking runs discussed in the testimony.

Counsel for appellant has directed our attention to the testimony of a particular witness, which he states is sufficient to establish corroboration of appellant's testimony. The witness, who was the supervisor of the experimental cracking units for appellant's assignee, testified that the aerogel catalysts made by the two chemists were used in fixed-bed cracking tests, and several exhibits, said to be original data sheets recording details of runs, disclose that such runs started on March 1, March 2, and March 27, 1939, respectively. Those sheets and others containing distillation data for those runs were discussed by the witness. One run was said to have been made with a silica aerogel and another with an alumina silica aquagel for comparative purposes. While the witness testified that he had supervised the cracking runs and had inspected the work of the catalyst preparation in the laboratory, the catalyst preparation does not appear to have been under his supervision. His work apparently included the direction of getting the products of the runs to the laboratory for tests and following up to see that the tests were carried out and reported. The witness, while he had made some calculations for a report on the various runs and prepared a summary of the conditions of the runs and analyses of their products, stated that he had assistants at the time who did that kind of work. He did not testify that he had direct knowledge of the things from which calculations were made, nor did he testify that he had made all of the calculations. Therefore, part of those calculations may have been the work of others. His testimony together with other testimony was sufficient to corroborate evidence of conception, but was clearly not enough to corroborate appellant's testimony for reduction to practice.

The record of appellant has not sufficiently established the identity of the catalyst used in the runs which are shown in the written exhibits. As far as the testimony of the supervisor is concerned, it is general in character and did not give direct information concerning the catalyst.

■ We do not find in the record that there is adequate evidence to prove that the type of fuel called for by the counts was produced. The tests necessary to show such production were not adequately proved. While there are data sheets in evidence bearing the signatures of those who conducted the tests, they were not called to testify; and we are unable to hold that there is any reasonable and certain testimony to establish that the process in issue here was carried out. The data sheets of themselves, not having been properly proved as to the accuracy of their contents, can not be held to be evidence of such contents.

■ We do not deem it necessary to go into further detail with respect to the evidence. To do so would unduly lengthen this opinion. It suffices to say that there is not sufficient corroboration of the testimony of appellant to sustain his burden of proving actual reduction of the processes defined by the counts to practice.

■ It is contended by appellant that the laboratory notebooks intended to support the testimony of appellant are admissible as evidence of performance of the acts recorded therein under the express provisions of the U. S. Code, title 28, Sec. 695, 28 U.S.C.A. § 695. In this connection, appellant cites in his brief the cases of

Landay v. United States, 6 Cir., 108 F.2d 698 and Johnson et al. v. United States, 6 Cir., 89 F.2d 913. The same contention was made before the board. In its decision, the board observed it had not overlooked that even in criminal cases original entries made in the regular course of business in the books of corporations may be properly admitted when identified by the one who superintended the making of the entries. The board then stated: "In the present case, however, observation of physical phenomena involving the acts and judgment of the observer are the matter reported upon and the only definite check on the accuracy of these observations would be the observations of another observer."

We are of opinion that the code provision cited by appellant was never intended to embrace such records as are here before us. While it may be true that in the research department of appellant's company it may be a matter of ordinary business to file such reports, nevertheless the contents thereof can not be considered legally sufficient even though they are routine with respect to their contents. We do not think that the facts or operations related in those reports can be properly held to prove themselves merely by identification by those who made the reports. That contention of appellant is frequently urged here. In connection therewith, we invite attention to our comments upon this matter appearing in the case of Senkus v. Johnston, 166 F.2d 597, 600, 35 C.C.P.A., Patents, ——.

 It is our opinion that appellant has not established diligence since shortly before the critical date, December 30, 1939, until the date when he filed his application. Diligence must be affirmatively shown. Hull v. Davenport, 90 F.2d 103, 24 C.C.P.A., Patents, 1194.

There is no showing of activity on the part of appellant between February 27, 1940 and July 18, 1940. Furthermore, it is admitted by an attorney in the patent department of appellant's assignee, that appellant's application was laid aside from December 10, 1940 until March 15, 1941 in favor of another invention said to have been of greater importance. Appellant is chargea-

ble with his attorney's lack of diligence, and the neglect of this application in favor of another is not consistent with the exercise of reasonable diligence. Brown, Jr., v. Barton, 102 F.2d 193, 26 C.C.P.A., Patents, 889.

In our opinion appellant has failed to establish actual reduction to practice as of a date prior to December 30, 1939, and has also failed to establish diligence between that date and the date of filing of his application, April 19, 1941.

We are convinced that no error was committed by the Board of Interference Examiners, and the decision appealed from is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Judge, was not present at the argument of this case and did not participate in the decision.