36 C.C.P.A.(Patents)

**WARE v. CARLTON et al.**

**CARLTON v. WARE et al.**

**Patent Appeal Nos. 5485, 5486.**

United States Court of Customs
and Patent Appeals.

Feb. 1, 1949.

Rehearing Denied April 8, 1949.

See also 173 F.2d 371; 173 F.2d 362.

Ephraim Banning, of Chicago, Ill., for Ware.

Harold J. Kinney, of St. Paul, Minn. (Carpenter, Abbott, Coulter & Kinney, of St. Paul, Minn., and Richard K. Stevens, of Washington, D. C., of counsel), for Carlton.

William H. Webb, of Pittsburgh, Pa., and Donald A. Gardiner, of Washington, D. C., (Stebbins, Blenko & Webb, of Pittsburgh, Pa., of counsel), for Robie and Ball.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal in a three-party interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority of invention of the ten counts in issue, Nos. 1 to 10, inclusive, to Norman P. Robie and Albert L. Ball, appellees.

The interference involves the patent to Ware, No. 2,278,158, granted March 31, 1942, on an application filed June 24, 1940, as a continuation-in-part of Ware's prior application No. 302,322, filed November 1, 1939; the application of Carlton, No. 261,069, filed March 10, 1939; and the application of Robie and Ball, No. 457,174, filed September 3, 1942.

Robie and Ball also reply in this interference on two earlier, four-party applications filed jointly by them with Benner and Rossow, namely, application No. 137,796, filed April 19, 1937; and application No. 336,212, filed May 20, 1940.

After the patent to Ware was issued, its ten claims were copied by Carlton and this interference was declared between Ware and Carlton. The application hereinbefore described which Robie and Ball filed September 3, 1942, contained the ten claims which they had also copied from Ware's patent. On that basis, such application was included in the present interference.

The party Ware moved to dissolve the interference as to the party Carlton on the ground that Carlton's application did not disclose the subject matter defined by counts 1 to 6, inclusive, 9, and 10. That

motion was denied by the Primary Examiner.

Ware also moved to dissolve as to Robie and Ball on the ground that they had no right to make any of the counts, for the alleged reason that Robie and Ball were guilty of laches in delaying until September 3, 1942, to assert claims to the subject matter defined by such counts. That motion was likewise denied by the Primary Examiner.

Robie and Ball filed a motion to shift the burden of proof both as to Carlton and as to Ware in view of the alleged disclosure of the subject matter of the counts in the two earlier applications of April 19, 1937, and May 20, 1940, jointly filed by Robie, Ball, Benner, and Rossow. This motion was granted by the Primary Examiner. Robie and Ball thus became the senior party. On a motion for reconsideration, the examiner adhered to his original decision as to all three motions.

Ware and Carlton each took testimony. Robie and Ball relied on the filing dates of the two earlier, four-party applications hereinbefore described for constructive reduction to practice. All three parties filed briefs and were represented at the final hearing. In that proceeding, the Board of Interference Examiners, among other things, agreed with the reasoning of the Primary Examiner, holding that as between Ware and Carlton, Ware was later both as to conception and reduction to practice, and that as to the three parties here involved, appellees Robie and Ball were entitled to the award of priority of invention of the subject matter defined by the counts.

The invention in issue relates to a coated abrasive sheet of the sandpaper type, and the method of manufacturing it. Counts 7 and 8 define the method, and the remainder of the counts define the article. With respect to the specifications upon which the patent to Ware was granted, and from which patent the counts were copied, it was stated by the Board of Interference Examiners that—"* * * In these specifications it is pointed out that glue bonded sandpaper wears out rather quickly when it becomes heated during use, since the surface becomes sticky at a temperature of about 120° F. and collects dust from the abrading operation. This filling in of the spaces between the grit particles causes loss of cutting power in a short time. To avoid this difficulty while keeping certain advantages of glue, Ware retains three of the usual components, i. e. the base or backing, the 'making' or initial coat of glue, and the abradents. However, he uses as a substitute for the useful glue 'sizing' or second coat, a sealing film comprising an alkali metal silicate which remains dry at high temperature. Accordingly, the dust from the abrading operation does not adhere to, but is free to fall or be knocked from, the abrading surface. The loss of cutting power due to accumulation of dust on the abrading surface is thus effectively eliminated."

Counts 4 and 8 are regarded as sufficiently illustrative. They read:

"4. A flexible abrasive sheet for use under conditions developing high abrading surface temperatures comprising a base, a layer of abrading particles spread over the base, an adhesive making coat of material of high adhesion qualities, but of relatively unstable consistency becoming sticky at temperatures exceeding 120° F., anchoring the abrading particles to the base, and a thin protective film of substantially uniform thickness comprising an alkali metal silicate, a filter, and a moisture retaining substance, united to the adhesive making coat, surrounding said particles in general conformity with the surface contours thereof, and forming a seal against exposure of the material of the adhesive making coat, said film being of relatively stable consistency remaining dry and non-sticky at temperatures up to 1200° F. and being relatively hard at such temperatures, whereby said film remains substantially dry and non-sticky at high abrading surface temperatures for materially avoiding accumulation of dust on said abrading surface and also enhancing the abrading qualities of said surface due to the hard film surrounding said abrading particles.

"8. The method of protecting a thermoplastic adhesive making coat of an abrasive sheet which comprises the step of applying over such a making coat a thin continuous protective film which is relatively resistant to softening, tackiness and disintegration

368

in the presence of mounting temperatures such as would tend to soften and render the making coat tacky whereby to maintain over the making coat a seal to prevent contact therewith or loose foreign particles."

■ The primary question involved is whether the disclosure of the four-party application filed April 19, 1937, is sufficient to support the counts. The disclosure of that application, so far as pertinent, was duplicated in the applications of May 20, 1940, and September 3, 1942. Appellants contend that the board erred in holding appellees were entitled to shift the burden of proof on the ground that the applications of 1937 and 1940 contained the disclosure necessary to support the counts.

Carlton agrees with the arguments presented on the point in the brief of the party Ware who, after stating that the unique feature of the abrasive article here involved is provided by having a silicate sizing coat applied over a primary bonding coat of animal glue or the like, enumerates the following requirements of the counts: "It will be noted that count 1 provides that the 'thin protective film' of silicate is *united to* the adhesive coat' of glue or the like. Likewise, in counts 2 and 4, note the wording 'united to the adhesive making coat'. Count 3 says 'united to the making coat'. Counts 5, 6 and 10 say, 'applied over and joined to the making coat'. Counts 7 and 8 are method claims and say, 'applying over such a making coat a thin protective film' etc. The remaining count, i. e. count 9, calls for a 'thin protective film' of silicate of soda 'united to the adhesive coat'. *In all the counts the feature of the silicate coat being positioned over and united to the making coat is recited. * * *"* (Italics quoted)

The respective counts contain considerable language describing characteristic properties of the glue and of the sodium silicate, the principal materials disclosed in all the applications of the parties for use in the two layers or coatings which are produced in the manufacture of the article defined by the counts. Such characteristics of those materials are neither enumerated nor described in the application of 1937. The omission is wholly immaterial, however, since under the law such characteristics need not be described in that specification. See Riney v. Thomas, 77 F.2d 525, 22 C.C.P.A., Patents 1250.

No words of exclusion are employed in any of the counts limiting the use alone of sodium silicate or of another alkali metal silicate as a sizing coat, or other protective film, in the manufacture of the abrasive. Furthermore, as the board correctly indicated, the language of the counts is of such scope as to include an article in which the bonding adhesive consists of both a making coat and a sizing coat of glue, with a protective film containing alkali metal silicate extending thereover; or an article in which the making coat is glue, and the sizing coat is a protective film of alkali metal silicate.

The board in describing the disclosure of the specification of 1937 correctly noted the statements therein to the effect that previously it had been customary to use glue or varnish as the adhesive in the manufacture of the described abrasive articles. The board also referred to the following disclosures therein: "In accordance with our invention we provide as adhesives, for use in the production of flexible abrasives articles, soluble silicate solutions which may be used alone or in various combinations with other materials to produce novel effects * * *. * * * These silicate solutions may be used in applying both the making coat and the sizing coat or either of these * * *." The board further directed attention to the following paragraph of the specification, the italics being supplied by the board: "We have also found that we can strengthen or reinforce *flexible abrasive articles* such as discs, by applying to them *a coating of soluble silicte. This coating may be applied to articles bonded with glue,* varnish, resin or the like, or to the improved silicate bonded articles of our invention. The reinforcing coating may be applied by any suitable means and may *extend over the whole area of the article* if desired, though we have found that an annular coating around the periphery of an article such as a disc is productive of improved results. Such a coating may be applied to only one or to both sides of the article and may be of any desired thickness."

The board, after a critical analysis of the decision of the Primary Examiner, the disclosures of each of the involved applications, and the contentions of the respective parties, together with the counts in issue, came to the conclusion, as did the Primary Examiner, that each of the four party applications of 1937 and 1940, and the application of September 3, 1942, upon which appellees rely, disclosed the invention defined by the counts.

In his reasons of appeal appellant Carlton alleges that the board erred in reading into "the vague and ambiguous language" of the application of April 19, 1937, the specific subject matter of the counts. On the same point, appellant Ware alleges in his reasons of appeal, generally, that the board erred in holding the 1937 and 1940 applications of Robie et al. disclosed the invention defined by the counts: " * * * and specifically that these applications adequately and fully describe (a) a continuous protective film, of uniform thickness, surrounding the abradant particles in general conformity with the contours thereof, to form a seal therefor, and (b) a making coat of glue for the abradant particles."

With respect to the contention that the applications of Robie et al. do not disclose the described continuous protective film, the board referred to and approved the position of the examiner on that point; namely, that the sizing coats commonly used in the art are continuous, and there is no precise disclosure in the applications of any of the parties as to how any one could apply a sizing coat that would be discontinuous, and still be effective to serve the purpose of a sizing coat. "Sizing coats, as generally applied, are not so thick," the examiner correctly stated, "as to blanket the abrasive grains to such an extent as to interfere with or prevent the sharp points, corners and edges of the grains from cutting the work piece surface with a fairly high degree of freedom of action." Furthermore, the board correctly held that the sizing coat of the early four-party application and the coating extending "over the whole area of the article," as disclosed in that application, constituted a continuous film meeting the requirements of the counts.

Appellants further urge that the short paragraph hereinbefore quoted by the board from the specification in the application of 1937 is so vague as to be almost meaningless. They contend that the statement in that paragraph to the effect that the silicate coating may be applied "to articles bonded with glue," does not mean that the making coat only shall be of glue and the sizing or protective coat of a soluble silicate.

They argue that the counts do not read upon a structure in which the making coat and the sizing coat are of glue and a protective film over the sizing coat is of a soluble silicate. In dealing with this point, which was also raised before the tribunals below, the board stated: "Ware also contends that it cannot be urged when glue is used for two undercoats, viz., the making and sizing coats that the addition of a third outer coat of a silicate solution meets the requirements of the counts * * *. Most of the counts refer to a 'making coat' of thermoplastic adhesive, but although the Ware's specification says the sealing film 'may' be applied as a top or sizing coat * * * the silicate coat is recited broadly in the counts as a 'protective film' or a 'protective coat'. The use of the term 'comprise' does not exclude the use of an additional or intermediate coating, and the words 'applying over such a making coat' in counts 7 and 8 merely mean that the film is applied above the making coat and not necessarily in contact therewith. Moreover, such language as 'united' or 'joined' to the making coat does not preclude the protective film from being united or joined to the making coat through an additional coat. Accordingly, aside from the statement in the early four party application that the silicate solution may be used for the sizing coat * * * and whether or not the words 'bonded with glue' in the above quotation refers to two coats of glue, we believe that the contentions of Ware * * * are untenable."

Each of the appellants takes vigorous exception to the decisions of the board hereinbefore expressed, not only with respect to the sufficiency of the disclosure of the applications upon which appellees rely, but also with respect to the alleged broad and

"unreasonable" interpretation given to the counts. The court, however, is not convinced by the arguments of appellants that the board erred with respect to its holdings hereinbefore described.

■ Appellants further argue that even if the application of April 19, 1937, had disclosed the invention defined by the counts, appellees are not entitled to rely on the filing date of that application for constructive reduction to practice. Specifically, appellants maintain that the board erred in holding appellees' application of September 3, 1942, which was filed by one entity consisting of two parties, could qualify under the rule stated in the case of In re Roberts, 49 App.D.C. 250, 263 F. 646, as a division or continuation-in-part of earlier applications, filed by another entity consisting of four parties, since (1) reasonable diligence to correct a mistake, and (2) the establishment of good faith on the part of appellees, had not been established.

The involved application of 1937 was a four-party application, the application of May 20, 1940, was also a four-party application, filed by the same parties, as an alleged "continuation-in-part" of their previously filed application of 1937; and appellees' application here involved was filed by them September 3, 1942, as a two-party application and as a division of the then copending and hereinbefore described application of May 20, 1940.

The record establishes that the subject matter here in issue, namely, in a coated abrasive, the use of a thermoplastic making or bonding coat and a sizing or protective coat comprising a soluble silicate, was the exclusive invention of Robie and Ball and was mistakenly disclosed, but not claimed, in the applications of 1937 and 1940, filed by them jointly with others.

The record further discloses, and the board correctly held, that appellees' divisional, two-party application, containing the claims drawn to the subject matter here in issue, was filed September 3, 1942, just before an appeal was entered on October 17, 1942, from the examiner's rejection of the broad dominating subject matter of the preceding four-party application of May 20, 1940; that since appellees had filed their divisional application for the purpose of interference well within the year, from the issuance of the patent with which the interference was sought, as required by section 4903, R.S., U.S.C., title 35, sec. 51, appellees were guilty of no laches and acted in good faith in submitting their application containing the claims which they copied for the purpose of interference.

It should be noted that while application No. 137,796 was still pending, application No. 336,212 was filed; and while application No. 336,212 was still pending, application No. 457,174, here in issue, was filed. The subject matter of the counts, accordingly, has been continued before the Patent Office by appellees since the filing date of their parent application, April 19, 1937. On that basis, and for the reasons stated, we concur in the conclusions reached by the tribunals of the Patent Office on the respective points in question. See Chapman et al. v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491; Alexander Milburn Company v. Davis-Bournonville Company, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651; Benedict v. Menninger, 64 F.2d 1001, 20 C.C.P.A., Patents, 1138; Teter v. Kearby, 169 F.2d 808, 36 C.C.P.A. Patents, ——.

Subsequent to the filing of the record in this court the parties Robie and Ball filed a motion suggesting a diminution of the record of Ware by the addition thereto of certain parts of the record filed in the Patent Office. The motion was granted subject to an order of the court that the costs of printing the additional matter requested by appellees should be taxed on final decision. We are of opinion that the additional matter so certified to the court was reasonably necessary to a proper decision of the issues in this case. Under the facts thus presented, the costs of printing the additional matter requested by Robie and Ball will be taxed against the party Ware.

■ In view of the conclusions hereinbefore set forth, it is deemed unnecessary to pass upon other points raised by the parties to this appeal. The decision of the Board of Interference Examiners is accordingly affirmed.

Affirmed.