## In re NEUBERTH.
### Patent Appeal No. 3618.

Court of Customs and Patent Appeals.
April 20, 1936.

Emery, Booth, Varney & Whittemore, of New York City (Nichol M. Sandoe, of New York City, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellant has here appealed from the decision of the Board of Appeals of the United States Patent Office, which affirmed the action of the Primary Examiner in rejecting all of appellant's claims in his application for an alleged improvement in metal stock. The ground of rejection by the Patent Office tribunals is hereinafter quoted. The conclusion by the tribunals that the allowance of the appealed claims would amount to a patent for the same invention as is covered by appellant's article patent No. 1,842,280, arises from the history of the alleged invention which appellant, in his brief, recites as follows:

"In April, 1929, applicant filed an application for letters patent to cover a method and apparatus for working metal in the cold state, which application was based on certain experimental work which had been carried out in connection with the manufacture of metal tubes. The said application was prosecuted to allowance and was issued on June 16, 1931, No. 1,810,886. During the course of this experimental work with tubes, it was soon discovered that the tubes produced possessed remarkable properties which had hitherto been unknown in cold worked tubes. Investigation of the crystalline structure of said tubes demonstrated that these properties resulted from a novel crystalline structure produced by the said method and apparatus. Accordingly, an application was filed on April 11, 1931, Serial No. 529,534, for a patent to cover said tubes having the said novel crystalline structure which had been found to be useful and valuable. The said application was also prosecuted to allowance and the patent issued on January 19, 1932, No. 1,842,280. * * *

"Subsequently, however, it was discovered that solid stock did, in fact, possess the same crystalline structure as the tubes, and it was also discovered that the said crystalline structure produced physical properties in solid stock which were of even greater importance in solid stock than in tubes. It was decided, therefore, to file an application to cover solid stock having this novel crystalline structure inasmuch as no claim had been made in this field in the tube application. * * * The present application was filed on December 5, 1931, Serial No. 579,138, more than a month before the tube patent issued, so that this application and the tube application were co-pending."

It will be observed that appellant first filed an application for a method and apparatus for producing metal tubes by the cold-rolling process, and that during the pendency of this application, which ripened into patent No. 1,810,886, appellant filed an application, and a patent, No. 1,842,280, was granted thereon for the article produced by his method and apparatus, to wit, a metal tube. The application relating to the tube contained fourteen article claims and no method claims. During the prosecution of the said last-referred to application, appellant filed the instant application, which also contains fourteen claims, all of which are drawn to cover either "solid metal stock" or "a round metal rod."

The metal stock and rods involved in the claims at bar are made by the same process as that called for in appellant's said method and apparatus patent, except that in the making of the tubes it is necessary to have a mandrel inside the tube. Appellant in his specification in the instant case, after calling attention to the method of his said patent No. 1,810,866, states: "It is obvious that by removing the mandrel from such machines and by feeding solid stock for reduction by the rockers in accordance with the method therein described, it is also possible to reduce solid stock such as rods, bars, strips and the like. It is found that such solid stock may also be worked to an almost unlimited extent, also without annealing and without destroying the characteristics of the metal. * * *"

The claims in the application at bar and the claims in the patent for the metal tube, No. 1,842,280, are distinguishable only in that the application at bar covers the intracrystalline structure in solid metal stock or a round metal rod, while the patent relates only to the intracrystalline structure of tubes. Some of the claims in the present application refer to a majority of the crystals which characterize the structure, while other claims refer to different percentages of the crystals which possess the characteristics referred to in all the claims.

Claims 2 and 12 are illustrative of all the appealed claims, and read:

"2. As an article of manufacture *a round metal rod* characterized by this: that in a longitudinal section taken through the longitudinal axis thereof a majority of the crystals appear elongated with surface made up for the most part of elongated longitudinal fibers." (Italics ours.)

"12. As an article of manufacture *solid metal stock* in which the intracrystalline structure is characterized by the presence, in a majority of the crystals, of fold lines extending substantially parallel to the axis of elongation of the stock and by the substantial absence of slip-lines." (Italics ours.)

Claim 12, of appellant's patent No. 1,842,280, is illustrative of all the claims therein contained, and recites the subject-matter which the tribunals of the Patent Office regarded as the same as that claimed in the instant application, and reads as follows: "12. As an article of manufacture, *a metal tube* in which the intracrystalline structure is characterized by the presence, in a majority of the crystals, of fold lines extending substantially parallel to the axis of elongation of the tube, and by the substantial absence of slip-lines." (Italics ours.)

The Examiner did not cite appellant's patent No. 1,842,280 as a prior art reference, since the application for it was co-pending with the instant application, but stated:

"The reference discloses and claims a tube having the same crystalline structure as that of the solid metal stock here claimed, the tube having been made by advancing it on a mandrel between the rockers of said device. The claims of the reference are the same as those in the application with the exception that they recite either 'solid metal stock' or 'a round metal rod' instead of 'a metal tube.'

"Applicant contends that because the reference was copending with the present application it is not a valid reference against the claims. The rejection is not on the *disclosure* of the reference, however, but is on the *claims* of the reference. The case of Ex parte Chapman, 1924 C.D. 143, is

authority for the doctrine that the claims of an applicant's patent can be used as prior art for another of his applications, whether the application for the already-granted patent was filed before or after the filing of the application for the second patent. (In the present case the application for the reference patent was filed before the present application.) The case of Ex parte Hammond and Hammond, 1922 C.D. 15, is cited in the above case as holding that a claim in a later application, to be patentable, must define something in addition to and which involves invention over what is covered by the patent and the prior art."

Applying the above principle to the rejection of the appealed claims, the Examiner then said: " * * * To form metal stock of non-tubular section from the metal tube disclosed and claimed by the reference is not invention. Having the metal, with the desired grain and crystal structure, in the form of a tube, it is obvious to cut out a portion of the side wall of the tube to form a solid round rod or any desired shape if such a shape having that crystal structure is desired."

Before the Board of Appeals the applicant cited the following cases, which he also cites and relies upon in this court, Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co. (C.C.A.) 22 F.(2d) 259, and Driver-Harris Co. v. Hardite Metals, Inc. (D.C.) 28 F.(2d) 413, as authority for his contention that the claims of his instant application were not required to be for a separate invention in order to be allowable.

The Board of Appeals discussed those cases and held them inapplicable, and also called attention to this court's decision in Re Fischer, 57 F.(2d) 369, 19 C.C.P.A. (Patents) 1077. The latter case the Board did not discuss. The Board concluded that: " * * * It certainly can be of no pat-

entable significance whether this metal structure be in stock which is tubular or solid. The claims of the application are directly readable on a portion only of the tubes claimed in the patent and some of the application claims are so broadly drawn as to be anticipated by either portion of the tube when divided along its longitudinal axis into a plurality of pieces."

While our decision in Re Fischer, supra, in some respects has a bearing on the issue here presented, the situation there was somewhat different from the one presented here, and that case can hardly be suggested as a complete answer to appellant's contentions here made.

We agree, however, with the Patent Office tribunals that appellant is here "claiming nothing more than the same invention in substance as is claimed in the patent," and that their view of the inapplicability of the first two above-cited cases is the correct one. It certainly would not require invention to split and lay open appellant's metal tube. The invention cannot rest in the mere form of the solid metal stock, whether in plates, bars, rods, or other forms. The desirable crystalline properties of the metal tubes which appellant made by his method and apparatus were the useful result of his invention for which he was allowed a patent. It seems clear to us that no separate invention could possibly rest in discovering that the same crystalline structure was found in rods or other forms of solid metal stock when produced by appellant's patented rolling method. The statement above quoted from appellant's application at bar would seem to confirm this view.

We agree with the decision of the Board that the Examiner properly rejected all the claims of appellant's application for the reasons stated by him and by the Board. The decision of the Board of Appeals is affirmed.

Affirmed.