Bland, Judge,
delivered the opinion of the court:
Henry B. Allen filed his application in the United States Patent Office for a patent relating to a cutting tool for high speed cutting of non-metallic materials. The Primary Examiner finally rejected *1067 claims 1 and 2 which are the only claims in the application. They read as follows:
1. A cutting tool for high speed rotary cutting of non-metallie materials composed of a steel of the high-carbon, high-chrome type whose analysis falls within the following limits: .carbon 1.50% to 2.25%, manganese .20% to .60%, silicon .10% to .40%, chromium 11.50% to 13%, sulphur maximum .40%, phosphorous maximum .040%, balance substantially all iron.
2. A cutting tool for high speed rotary cutting of non-metallic materials composed of a steel of the high-carbon, high-chrome type having substantially the following analysis: carbon 1.75%-1.85%, manganese ,25%-.35%, silicon .20%-.30%, chromium 12.0%-12.5%, sulphur maximum .40%, phosphorous maximum .40%, balance substantially all iron.
The references relied upon by the examiner were:
Comstock, 1,815,613, July 21, 1931.
Comstock, 1,695,916, December 18, 1928.
Gill, 1,727,282, September 3, 1929.
Upon appeal to the Board of Appeals, the decision of the examiner rejecting the claims was affirmed for substantially the same reasons as those assigned by the examiner. The references were not discussed at length by either tribunal. Certain features of the Comstock patents were referred to and discussed by the board. Owing to the admissions made by appellant hereinafter referred to, it appears obvious that no detailed consideration of the references, except possibly certain features of the Comstock reference, 1,815,613, need be indulged here.
In describing his invention relating to the cutting tool for high speed cutting of non-metallic materials, appellant, in his brief, states:
The cutting tool for the high speed rotary cutting of non-metallic materials of appellant’s invention is composed of a steel of the high-carbon, high-chrome type in which there is present carbon from 1.50% to 2.25% and chromium from 11.5% to 13% with small amounts of the usual elements of steel in addition to the iron which makes up the balance of the product (Rec. p. 5).
Appellant makes no claim to the steel, per se, and points out in his affidavit (Rec. p. 19) that it has been known for at least thirty years, and has been personally known to him since 1913. Although the steel composition was very old, it had never been used in a cutting tool for <my purpose. In fact, the steel was known to have no utility in a cutting tool for metals (infra pp. 14-15). Its use had been limited to wire drawing and roller threading dies, and punches for metal, where an entirely different type of action is encountered. In these uses there is merely a displacement of the metal caused by exertion of pressure, in contradistinction to the removal of chips and the like by the sharp edge of the tool and the relative movement between the cutting element and the material being cut (Rec. p. 19, par. 4). These facts are evidence of appellant’s claim to invention, * * *.
The benefits which he claims flow from his invention are: First. His cutting tool when used on non-metallic materials may be used three times longer than prior art cutting tools. Second. His cutting *1068 tool is tougher than cutting tools previously known, and breakage is thereby reduced to a minimum. Third. His cutting tool is less expensive both from a standpoint of material and manufacturing cost. Fourth. The operations in hardening and tempering his cutting tool may be performed at much lower temperatures than if high speed alloy tool steels were used.
The Patent Office tribunals, after stating that the steel used by appellant was old in the art of tool making, pointed out that appellant’s claimed invention rests solely upon finding a new use for an old material and that it did not require invention to put the old material to the new use of making tools for cutting non-metallic substances such as synthetic resin products.
Appellant frankly admits that the prior cited art shows that a steel such as he uses was old in the art of making punches, dies, etc. He states he made no claim to the steel per se because this steel had been known for at least thirty years and personally known to him since 1913, but asserts that it had never been used in a cutting tool. Appellant also contends that, prior to his discovery, a tool of this character had been proven to be unsatisfactory when used for cutting metals and that this fact would ordinarily be calculated to induce those skilled in the art to believe that it could not be satisfactorily used in tools for cutting non-metallic substances.
In affirming the action of the Primary Examiner in denying the claims, the board said:
As a general rule, the mere substitution of one old and well known material for another is not a matter of invention, even though the substitution leads to the production of a superior article. In some cases, where the new use involves new properties of the materials, the act of substitution has been held to amount to invention. Although the appellant admits that the steel used by him is old in the art, the references cited by the examiner require consideration to determine whether or not the properties of this material were such as to lead one to believe that it might be useful as a material from which cutting tools for nonmetallic materials might be made.
Considering the difficulty involved, one would expect any steel having considerable hardness, and known to be resistant to wear, worthy of trial. The Comstock patent, 1,815,613, says of high-carbon, high-chrome steels that they, like the manganese steels, have a high resistance to abrasion. Comstock also says that products resulting from their use may be hardened in air, oil or water. While the steels discussed by Comstock went into the production of cutting tools, designed for high-speed work, the steel itself was used as a binder for tungsten carbide, the latter being present in quantities up to 95% in some instances.
The second Comstock patent, in discussing a similar steel, again mentions its high resistance to abrasion. It also speaks of the characteristic of hardness. In patent 1,695,916, Comstock was particularly concerned in producing a steel having the general characteristics of high-carbon, high-chrome steel but with a slightly lower carbon content to permit annealing, and hence subsequent machining. Comstock contemplated using this steel for dies such as are used to- *1069 form the sheet metal parts of automobile bodies. On page 3 of the iiatent,. Comstock says:
“The steel has a very high resistance to abrasion and is therefore particularly adapted for dies and punches, although the steel may be used for other purposes,”
Again he says:
“It should be understood that the steel may be used for other purposes, particularly where great hardness and resistance to abrasion are desired in the finished article, combined with easy machining of the annealed material.”
From the matter quoted it seems to us that one desiring a material for tools likely to become dulled by abrasion would see in the material discussed by Corn-stock one suitable for his particular purpose. We are unable to see that the selection of material involved in this application required the exercise of invention.
It seems to ns that the question involved is whether or not, under the circumstances of this case, there was invention involved in putting the old material to a new use. As a general proposition of law, the mere substitution of materials 'is unpatentable. In re Schoenrock, 19 C. C. P. A. (Patents) 1268, 59 F. (2d) 235; In re Fisher, 20 C. C. P. A. (Patents) 708, 62 F. (2d) 96. To this rule there are exceptions. Sometimes the exception rests upon the proposition that the known use of the old material was in an art so far removed from that of the new use as to be wholly nonanalogous and not suggestive of the new use. In re Covey, 20 C. C. P. A. (Patents) 962, 63 F. (2d) 982. The exception also may r,est in the novel use of the article producing a result different in kind. Smith v. Goodyear et al., 93 U. S. 486. The decisions, however, seem to be uniform on the proposition that where the new use of the old material merely brings, about beneficial results differing only in degree, invention is not present. In the instant case, the prior art showed that it was old to use appellant’s material in making punches, which are metal tools. It is true that a punch is not a high speed cutter, but the principle of resistance to abrasion is involved in both instances. Appellant’s claimed invention is said to rest largely upon the fact that in his use of the old material there is much less abrasion than in other known uses. Comstock, 1,815,613, not only shows what the board stated it shows, but in a specific example given (Example I) states :
A specific example of a composition suitable for use in tbe production of tools, sucb as drawing dies, extrusion dies, bigb speed cutting tools, such as bits, sbapers, drills, cutters, saws, and tbe like, is as follows:
Tungsten carbide, 87.00%, 13.00% of a manganese steel as herein referred to.
It seems to us that there is ample suggestion in the prior art cited, which is not sufficiently nonanalogous to be barred from consideration, to suggest to one skilled in making cutting tools that the old material might be profitably used in the art of making a high speed cutting tool for use on such materials as resins, and that appellant, *1070 in what he has done, has exercised no more than the mechanical skill of one experienced in the art.
We do not think it necessary to discuss in detail the cases relied upon by the appellant. In each of the cases relied upon, where there was a substitution material depended upon for patentability, there were facts which are not disclosed in the record at bar. Pertinent to our position in the instant case, we think, are the following decisions : In re Lawrence Bych, 18 C. C. P. A. (Patents) 1208, 48 F. (2d) 665; In re John Wesley Marden, 18 C. C. P. A. (Patents) 1046, 47 F. (2d) 957; In re Heap, 22 C. C. P. A. (Patents) 950, 74 F. (2d) 948; and In re Neuberg, 23 C. C. P. A. (Patents) 1070, 82 F. (2d) 718.
The decision of the Board of Appeals is affirmed.