SCHERING CORP. v. MARZALL, Commissioner of Patents.

Civ. No. 4861–50.

United States District Court

District of Columbia.

Decided Dec. 6, 1951.

Joseph Hirschman, New York City, for plaintiff.

Joseph Schimmel, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents, under Section 4915 of the Revised Statutes, 35 U.S.C.A. § 63, to procure the issuance of a patent which the Commissioner has declined to grant.

The application for a patent relates to the drug known as penicillin. The alleged invention was developed by Erwin Schwenk and Gerhard A. Fleischer, in the laboratory of Schering Corporation. The two inventors were members of the staff of the corporation and assigned their rights to it. This action is brought by the Schering Corporation as an assignee of the two individual inventors.

The testimony in this case tends to show that in its natural state penicillin is unstable and cannot be used commercially. The two inventors developed a process of combining the useful components of penicillin with ammonia. The resulting chemical reaction creates an ammonium-salt, which is one of the forms in which penicillin may be used for practical purposes.

The application for a patent, as originally filed, contained both process claims and product claims. The process claims were allowed by the Patent Office. The product claims were disallowed. In this action the plaintiff seeks an allowance of a product claim.

The product claim in issue is Claim 26, and reads as follows: "The substantially anhydrous ammonium salt of the antibiotic, acidic material contained in cultures of a mold of the group consisting of penicillium notatum and penicillium chrysogenum."

The Patent Office disallowed this claim on the basis of a publication known as "The Lancet", which in its issue of August 16, 1941 contained an article referring to a solution of a sodium salt of penicillin. The Patent Office held that, in view of this disclosure, it was not invention to substitute the use of ammonium salt for sodium salt.

At the trial the plaintiff endeavored to eliminate this disclosure by introducing evidence of prior use of a sodium salt by the two inventors. The Court admitted this evidence provisionally, so to speak, subject to a later determination of its admissibility. It is advantageous at times to follow this course in cases tried without a jury. The Court now holds that this evidence is not admissible, for the following reasons.

The evidence was originally presented to the Patent Office. The Patent Office rejected and excluded it from consideration on the ground that it was offered too late. By the time that the evidence was submitted to the Patent Office the proceeding had already reached the stage of its consideration by the Board of Appeals of the Patent Office. A period of eight years, approximately, had expired from the time that the Patent Office first cited the publication in "The Lancet". The Patent Office held that there was not a sufficient showing of a good reason why the tardiness in submitting this evidence should be excused.

An action under Section 4915 of the Revised Statutes contemplates a trial *de novo,* and evidence that was not introduced before the Commissioner of Patents may be offered at the trial. This is not the case, however, if the evidence was submitted to the Patent Office and the Patent Office excluded it, unless the action of the Patent Office in excluding it was arbitrary or capricious, or at least erroneous. In the opinion of the Court the action of the Patent Office in rejecting this evidence was not erroneous. In fact, it seems to have been entirely reasonable.

We must bear in mind, in this connection, the rule summarized by the Court of Appeals in Boucher Inventions v. Sola Electric Co., 76 U.S.App.D.C. 160, 162, 131 F. 2d 225, 227, where the following statement is made: "The practice, under Section 4915 as well as within the Patent Office itself, contemplates a full disclosure to that office, so far as is reasonably possible, particularly in relation to models, exhibits, drawings, etc. While the 4915 suit is *de novo* and permits introduction of evidence not presented to the Patent Office, it does not contemplate the suppression or the withholding of evidence * * *."

There is no contention that this evidence was suppressed, but it was withheld for a period of eight years, without sufficient excuse, according to the views of the Patent Office.

Even if this evidence were admissible, however, and were to be considered, it is clearly insufficient to establish the prior use of a sodium salt by the inventors. Prior use that is not described in any publication must be shown by clear and convincing evidence. It has been held again and again that the testimony of the inventor himself, which is not corroborated, is not sufficient. In this case Dr. Schwenk testified to the use in his laboratory of a sodium salt in the early part of 1941. He impressed the Court as a thoroughly honest and sincere witness. Nevertheless, it is a well known fact that human memory has its frailties and that recollection of exact dates of events that transpired many years previously is apt to be inaccurate and unreliable. This is the reason why corroboration is required. No corroboration was offered in this case.

To be sure, the plaintiff submitted laboratory note books, but these notebooks were not identified by the person who made the entries, or by any person who saw these books contemporaneously with the events which they purport to record.

These books were identified by witnesses who said they first saw them around 1950. There was no proof that they were contemporaneous records and were not made subsequently to the events which they profess to report.

It must be borne in mind that such notebooks are not admissible under the Federal Shop Book rule. Under the decisions of the Court of Appeals for this jurisdiction in the cases of New York Life Insurance Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F. 2d 297, and Clainos v. United States, 82 U.S.App.D.C. 278, 163 F.2d 593, the Federal Shop Book rule is limited to routine, clerical entries made contemporaneously with the event by a person charged with the duty

of maintaining the records. They do not extend to matters of opinion and similar matters.

In Senkus v. Johnston, 166 F.2d 597, 599, 35 C.C.P.A., Patents, 1008, the Court of Customs and Patent Appeals made the following illuminating observations that are applicable to this case: "Appellant, in addition to his oral testimony, placed in evidence many entries from his personal notebooks, and reports and letters bearing upon the invention which he sent to others, all of which were of value to establish his conception of the invention. However the notebook entries and reports to others are not sufficient to establish corroboration for the reason that they are merely self-serving in their character. Under the long established rule of law there must be independent corroboration of all the essential factors concerned in reduction to practice."

The same court passed upon a similar situation in Teter v. Kearby, 169 F.2d 808, 816, 36 C.C.P.A., Patents, 808. There the Court made the following statements: "While there are data sheets in evidence bearing the signatures of those who conducted the tests, they were not called to testify; and we are unable to hold that there is any reasonable and certain testimony to establish that the process in issue here was carried out. The data sheets of themselves, not having been properly proved as to the accuracy of their contents, can not be held to be evidence of such contents."

The Court, therefore, finds that there is not a sufficient showing of the use of sodium salt by the plaintiff's assignors prior to the date of the publication in "The Lancet". Therefore the publication in "The Lancet" will be considered by the Court as part of the prior art.

■ The Examiner and the Board of Appeals of the Patent Office concurred in holding that the use of ammonium salt in place of sodium salt did not constitute a product of inventive genius but was the result of ordinary mechanical ability of a person skilled in the art. It is well-established that mere choice of one material as against another is not invention in and of itself. Something more must appear than mere selection of a material not previously used for the particular purpose.

In this case the Court inquired of the plaintiff's principal witness why ammonium was selected instead of sodium, after the witness had testified that the use of sodium had been found unsatisfactory. The witness replied that it was necessary to use some salt that would not form water, and that it was known that the chemical composition of an ammonium salt was such that no water would be formed in the reaction between it and penicillin. The Court then inquired of the witness whether this characteristic of ammonium would be known to any well-informed chemist. The witness candidly answered in the affirmative.

It seems to the Court that, on the very basis of the testimony of plaintiff's principal witness, the substitution of ammonium for sodium was not invention, but one of those steps in the direction of progress that can be taken by a routineer—to use a word that I think was invented by Judge Learned Hand in some of his notable decisions.

This is no reflection upon the work of the plaintiff's assignors, because they have made a contribution, and for their contribution they have been rewarded with claims on the process that they devised.

Moreover, the patent to Wintersteiner No. 2,480,991, the filing date of which antedates the filing date of the application involved in this case, suggests the use of ammonium salt in the manufacture of penicillin in a commercial form.

■ The Court concurs in the conclusion of the Examiner and the Board of Appeals of the Patent Office that there was no invention in this case so far as the product claims are concerned. It must be borne in mind in this connection that as to technical matters such as this, great weight must attach to the decision of the Patent Office, especially if the two tribunals of that office concur.

■ As I already stated, the inventors in this case have made a contribution. No doubt they did valuable work in the penicillin field, but not every step forward in the art entitles the person who took the step to a patent. Otherwise patent laws would

interfere with progress rather than encourage it. Persons reasonably skilled in an art must remain free to take routine steps forward without being confronted by assertions of monopoly rights on the part of others. It is only for the product of inventive genius that the award of monopoly rights is to be accorded. This is especially important in the medical field with which we are dealing here.

Judgment for the defendant. Counsel will please submit proposed findings of fact and conclusions of law.