**SCHNEIDER METAL MFG. CO. v. ERNST, Inc.**

**Civ. A. 9010.**

United States District Court
W. D. Pennsylvania.

March 28, 1952.

Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for the plaintiff.

Christy, Parmelee & Strickland, Pittsburgh, Pa., for the defendant.

FOLLMER, District Judge.

The plaintiff, Schneider Metal Manufacturing Co. (hereinafter referred to as

"Schneider") brings this action against the defendant, Ernst, Incorporated (hereinafter referred to as "Ernst") alleging infringement of Patent No. 2,107,574,[1] issued February 8, 1938, to Rudolph W. Lotz (of which plaintiff is the assignee) for a "Collapsible Sidewalk Sign Support," which will be referred to as the "Lotz" patent. Defendant denies infringement and also sets up the defense that the Lotz patent discloses no patentable invention.

From the pleadings and proof I make the following

## Findings of Fact

1. The collapsible sidewalk sign manufactured by the defendant and sold to the

PLAINTIFF'S EXHIBIT 5

1. (Sketch therein shown below)

Pennzoil Company is the same as that made in accordance with the Lotz patent aside from minor substitutions of mechanical equivalents but without omission of any essential element or change in functions.

2. Rudolph W. Lotz, on application filed August 16, 1937, obtained a patent, No. 2,107,574, issued February 8, 1938, covering a "Collapsible Sidewalk Sign Support."

3. The arrangement in Lotz of the legs and sign carrier, whereby each leg respectively of one pair (one on each side of the sign carrier) at its upper end joins a leg of the other pair at a point on such leg below the upper end thereof, so that the first leg and the lower portion of the second leg form an inverted V and with the side of the vertically disposed sign carrier attached to the upper end of the second leg and at a lower point on the side of the sign carrier to the first leg at some point thereon distanced from the upper end of such leg, thus forming a triangle, with one of the three points of connection to be detachable so as to permit collapsing of such sign support, is fully anticipated by Patent No. 301,-392, issued July 1, 1884, to Justus H. Rudolph for a "reversible blackboard."

4. Any changes such as the use of metal instead of wood and the joining of the legs by rivets or bolts in parallel planes instead of hinging in the same plane, and any new functions obtained thereby, were fully known in the prior art and are fully covered by the disclosures contained in Patent No. 1,924,352, issued August 29, 1933, to Walter Edwards for a sidewalk sign in so far as any of the claims of the Lotz patent are involved.

5. There is nothing new in either the elements or the functions involved in the claims of the Lotz patent and there is no novelty or invention disclosed therein.

## Discussion

Plaintiff's patent (the Lotz patent) covers a sidewalk sign support. Lotz states that it relates "to improvements in collapsible sidewalk sign supports which are cheap, durable and efficient and which may be folded to occupy a very small space so as to enable them to be packed and shipped in very flat cartons,"[2] and which "can be very easily set up and collapsed, respectively, by unskilled persons."[3] In his description, he refers to the use of channel iron, in one instance using the term "preferably",[4] but none of the claims are limited to any type of material. In the description he refers to the legs as "arms 4 of a U-shaped support 5",[5] and Figure 1, as can be seen in the sketch of Lotz' design also shows such construction, but he also says, "Obviously, the middle or crossbar portions of the arms or legs 4 and 9 may be omitted if desired, said arms constituting supporting legs whether connected, as shown, or not."[6] The claims merely refer to pairs of supporting legs. With reference to one pair of legs the description states, "The said terminal end portion 8 of each of the arms 9 is offset slightly inwardly from the body portions thereof and the arms 9 of the member 10 are thus pivotally secured to the arms 4 of the member 5."[7] Figures 1, 2, and 3, also thus illustrate it. None of the claims, however, make any reference thereto, only requiring that the said pair of legs be "pivotally secured to," or "engaged with," or have a "connection between" them and the second pair of legs. There is a provision in claim 4 as to "said legs being offset laterally from each other," which quite clearly has reference to a requirement that the legs move in adjacent planes and this could be with or without any additional clearance between such adjacent planes. Any spacing desired for clearance between the two legs could be accomplished equally as well by the use of washers, spacing sleeves or bushings, or any other method. Although apparently a collapsible structure is contemplated in the objects of the patent, and although Lotz also states, "thus enabling the device to be disposed in a carton of a width substantially

2. Plaintiff's Exhibit No. 5, Page 1, Col. 1, Lines 1–5.
3. Plaintiff's Exhibit No. 5, Page 1, Col. 1, Lines 7–9.
4. Plaintiff's Exhibit No. 5, Page 1, Col. 1, Line 39.

5. Plaintiff's Exhibit No. 5, Page 1, Col. 1, Line 49.
6. Plaintiff's Exhibit No. 5, Page 1, Col. 2, Lines 39–42.
7. Plaintiff's Exhibit No. 5, Page 1, Col. 2, Lines 4–8.

equal to the width of said arms and middle portion of the member 1 (vertical side of sign support) and of the members 5 and 10, (crossbars between the pairs of legs) as shown in Fig. 2",[8] only claims 1, 4, and 6 require any detachability at any pivotal connections for such collapsing, and only claim 4 requires that the legs be offset laterally so that it would collapse in a single plane thickness.

But, in any event, what is there that is unique about any of these matters? Walter Edwards, in 1933, obtained Patent No. 1,924,352 [9] for a sign support designed, as

8. Plaintiff's Exhibit No. 5, Page 1, Col. 2, Lines 34–38.

DEFENDANT'S EXHIBIT "C"

9. (Sketch therein shown below)

he says, primarily for use on sidewalks, which had among its objects that it would "hold to dimensions which will allow of its acceptance by the Post Office for shipment assembled",[10] and "which may be folded into a small and compact article for storing." [11] Edwards in his application filed August 2, 1932, just as does Lotz in his application filed August 16, 1937, includes a drawing (Fig. 1) showing the use of channel iron with each pair of legs formed of one piece with the crossbar forming a so-called U shape. The one pair of legs is also (as in Lotz) shown with the terminal end portion of each of the legs (called arms in Lotz) offset slightly inwardly from the body portions thereof, but (as in Lotz) the claims are not limited to channel iron or any particular material, nor to any particular method of obtaining a clearance between the legs moving in parallel planes, the claims (as in Lotz) merely calling for pivotal connection and supporting legs without any reference to such one piece U-shaped formation of the legs. Within the claims the construction could be (as in Lotz) with the spacing between parts accomplished by the use of such suitable and well known methods as washers, spacing sleeves and the like, as well as by offsetting slightly the end portions of such legs.

Anyone who has constructed or even seen the well known "wooden horse" or "trestle" is familiar with the ordinary support made of two straight legs joined at their apex to form an inverted V and with a cross brace, thus assuming a shape in the form of the letter A. Edwards modified this basic construction by making the brace of a long and short arm connected by a swivel joint. Since the vertical frame of the sign carrier must be fastened to the legs at their junction and to the cross brace, he also provided moveable swivel points of connection be-tween the ends of the braces and the legs so that the legs could be folded without removing any bolts or other connections. Plaintiff naively points to the fact that Figure 1 in Edwards' patent shows legs of equal length and that with the crossbar forming the U-shaped legs it would not "nest" in a single plane thickness. Any high school student, assigned this problem, would immediately perceive that lengthening one pair of legs approximately one inch would permit such "nesting." Of course, the point of junction of the vertical sign support with the cross brace would have to be adjusted accordingly and the laws of physics pertaining to balance and the center of gravity invoked by either calculation or experimentation to determine the proportionate lengths of parts in order to attain any required degree of stability. However, those laws have never been patented. They may be found in any good machinist's handbook or even in the average high school book on physics in which the authors so frequently feel compelled to call attention to the classic example of the leaning tower of Pisa. Nor does Edwards mention any requirement that the legs be of equal length, or that there be a crossbar between the legs, and any straight pair of legs bolted or riveted together in parallel planes will thus fold to single thickness. The Edwards stand, as he clearly intended, can be constructed to fold in a single plane without the removal of any bolts. Simple and obvious alterations to reduce cost of construction present themselves to the ordinary mind.[12] One of them is to disconnect one leg from the sign support and the brace from the other leg, swing the two parts together and rejoin to the other leg. At this point the brace is eliminated and there is nothing in Lotz that is not covered. And this formation is not new. Justus H. Ru-

10. Defendant's Exhibit "C", Page 1, Col. 1, Lines 15–17.

11. Defendant's Exhibit "C", Page 1, Col. 1, Lines 24–25.

12. e.g. The Texas Co. submitted a blue print (Plaintiff's Exhibit No. 9) for bids on a modified form of the Edwards stand wherein to reduce cost of construction it utilized the two removable bolts joining the braces to the sign support and substituted fixed riveted joints at the points of connection of the braces and the legs for the more costly sliding type of connection of Edwards' design. A mere glance at this sketch suggests a further simplification by eliminating the swivel joint in the cross brace and joining the two parts of the brace by the bolt connection with the sign support.

dolph on July 1, 1884, obtained Patent No. 301,392 [13] for a "reversible blackboard" which incorporated this identical method of support,[14] in which patent he had in mind "to simplify and cheapen the general construction of such articles," and "so that the holder, when not in use, may be folded up against the frame, out of the way." [15]

Plaintiff says this does not anticipate because it is a blackboard, not a sidewalk sign, and the drawing shows the legs, made of wood, hinged together so that they move and fold in the same plane to a double thickness and with one pair of legs having a slight curve at the end where it joins the blackboard frame, and the claim requires that the legs be "hinged." The answers are obvious. Anyone who has traveled a country road has seen the framed panels, painted black, on various types of supports, informing the passerby of the price of eggs or other commodities, and what is it, if not a blackboard and also a sidewalk sign? [16] The reason for the slight curve at the end of one pair of legs in "Rudolph" is quite apparent. Under his concept of 19th century artistry he constructed the blackboard frame having top and bottom strips "the ends of which extend a little beyond the side strips to improve the appearance." [17] The curves at the tops of the legs served to clear these projections. But let us suppose the farmer, in constructing his blackboard sidewalk sign, follows Rudolph's arrangement. He would use the simple construction of a flat frame, without the useless projections, he would pick up straight pieces of wood (or metal if available) and he would not hunt for a pair of hinges, but would bolt, screw or otherwise fasten them

DEFENDANT'S EXHIBIT "B"

13. (Sketch therein shown below)

14. Plaintiff stresses the age of this patent as requiring careful scrutiny but whatever is disclosed therein is now dedicated to the public, and its age is not of itself sufficient to lessen its force as a reference for whatever structure it discloses. In re Crosby, 157 F.2d 198, 34 C.C.P.A., Patents, 701.

15. Defendant's Exhibit "B", Page 1, Col. 1, Lines 9–10, and Page 2, Col. 1, Lines 2–4.

16. They are certainly not "remote" or non-analogous. Martin v. Wyeth, Inc., 4 Cir., 193 F.2d 58; General Metals Powder Co. v. S. K. Wellman Co., 6 Cir., 157 F.2d 505–510; Dominion Electric Corp. v. McGraw Electric Co., D.C.N.D. Ohio, 101 F.Supp. 310.

17. Defendant's Exhibit "B", Page 1, Col. 1, Lines 32–34.

together in moveable joints, and perforce they would move in parallel planes and fold in a single thickness. Of course, there would be a space between the one leg and the vertical frame so he would insert a block of wood with a hole in it, or use washers, or anything available. He might not call it a spacing sleeve. Having completed it, he would have Rudolph's claim 1, "A slate or blackboard composed of the frame A, containing the slate, the legs 6 6, pivoted on the said frame, and legs 7 7, hinged to the said legs 6 6 and adjustably connected to the frame A, substantially as described.", and by this simple, natural, obvious construction thereof he would, to his great surprise, also be accused of infringing Lotz. And if a mechanic skilled in the art were instructed to construct Rudolph's blackboard so that it would fold in a single plane thickness for parcel post shipment, he would use the mechanical equivalents already discussed and so well known in the prior art, and have the same result as the farmer. Plaintiff argues that the word "hinged" prohibits this interpretation. Unfortunately, for plaintiff, Webster's Unabridged Dictionary illustrates the definition of "hinge" with a "hook and eye hinge" in which the parts joined would move in parallel planes.[18]

■ The Lotz patent therefore reveals no new combination of old elements producing a new mode of operation or a new result never before attained.[19] There is no invention in substituting one well known material for another well known material, the functions and results thereof being already well known in the prior art.[20] Lotz made no change which involved a display of ingenuity beyond the compass of the routineer.[21] Lotz added nothing to the total stock of knowledge, but even if we concede to him a more liberal interpretation than we believe it deserves, he has merely brought together well known segments of prior art and claims them in the aggregate as a monopoly.[22]

As the Supreme Court recently stated:[23] "A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men." In the present case they are the resources which are so obvious, natural and well known that the words "available to the unskillful" may well be substituted.

■ This is a "machine" patent consisting of a combination of elements which must be scrutinized "with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements."[24] In the present instance, it is impossible to find any new element or any new function or useful result. What was

18. The Texas Co. sketch (Plaintiff's Exhibit No. 9) illustrates the common usage of "hinged joint" as applying to the Lotz and Edwards types of pivotal connections.

19. Jacuzzi Bros., Inc., v. Berkeley Pump Co., 9 Cir., 191 F.2d 632; In re Kaufmann, Cust. & Pat.App., 193 F.2d 331; Hutchinson Mfg. Co. v. Mayrath, 10 Cir., 192 F.2d 110; Application of Lockhart, 190 F.2d 208, 38 C.C.P.A., Patents, 1195; Zephyr American Corp. v. Bates Mfg. Co., 3 Cir., 128 F.2d 380; Tropic-Aire, Inc., v. Cullen-Thompson Motor Co., 10 Cir., 107 F.2d 671; Application of Kamlet, 185 F.2d 709, 38 C.C.P.A., Patents, 776.

20. Evr-Klean Seat Pad Co. v. Firestone Tire & Rubber Co., 8 Cir., 118 F.2d 600; Cridlebaugh v. Rudolph, 3 Cir., 131 F. 2d 795; In re Allen, 88 F.2d 705, 24 C.

C.P.A., Patents, 1066; Schering Corp. v. Marzall, D.C.D.C., 101 F.Supp. 571; Goodwin v. Borg-Warner Corp., 6 Cir., 157 F.2d 267, 274; Walker on Patents, (Deller Ed.) Vol. 1, Page 179, @ 29.

21. Schering Corp. v. Marzall, supra; Lebold v. Marzall, D.C.D.C., 100 F.Supp. 867.

22. General Bronze Corp. v. Cupples Products Corp., 8 Cir., 189 F.2d 154; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162; Asseff v. Marzall, 88 U.S.App.D.C. 358, 189 F.2d 660.

23. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162.

24. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra.

done here, as has been indicated, did not even require the mechanical ability of a person skilled in the art. At best, it would be the result of ordinary mechanical skill.[25] There was no new result for which the industry had been clamoring, nor was it, when made known, universally adopted by the industry, nor did it to any great extent supplant all prior structures.[26] As a matter of fact, only three oil companies, of the vast number of oil companies and other numerous sidewalk sign users, were shown to have used it at any time. While we do not reach the point where commercial success would be a factor, no such commercial success was in any event shown. This is not a situation where there has been the attaining of an object never before accomplished.

■ Plaintiff's argument seems to be that narrowness and simplicity do not bar patentability. We concur. Despite apparent simplicity of a device, there may be invention where it appears that the industry in question had for many years labored under the handicap of unsatisfactory signs; that much effort was exerted to remedy the situation; that numerous devices were recommended, tried and abandoned, and that the sign of the patent in suit met with hearty response on the part of the users. In other words, one who produces a patentable new result, the simplicity of which effects a saving of time and costs, not suggested by the prior references, may be entitled to a patent.[27] But there is nothing in the Lotz claims which falls within those categories, or which is not a matter of common knowledge or fully disclosed in the prior art, or which produces any new result.

Plaintiff in striving to show some merit in the patent refers to matters not covered by the claims. But even here the plaintiff can find no comfort. He speaks of the nesting of the legs and single package thickness. It has already been pointed out that Edwards and also Rudolph (with the ordinary, customary present day construction) would do the same equally well. Some comfort is sought in the statement that with a 180 degree rotation between the sign carrier and the legs it would fold in a single thickness with shorter length. Only claims 1, 4, and 6 of Lotz call for detachability. Rudolph's stand quite clearly includes detachability and when constructed in the customary modern manner (without, of course, the beautifying frame projections) would do precisely the same and just as effectively. Edwards' stand would likewise perform the function without any modification since he says in claim 1, "and bolts passing through the frame and braces for holding the frame against movement." With the removal of these bolts, as in Lotz, it would fold in exactly the same manner.

We must, therefore, conclude that the claim of invention is without merit.

### Conclusions of Law

1. Patent No. 2,107,574 issued to Rudolph W. Lotz is invalid for lack of invention.

■ 2. The claim of infringement has therefore not been sustained.

Let appropriate decree be drawn and presented in accordance herewith.

25. Lincoln Stores, Inc., v. Nashua Mfg. Co., 1 Cir., 157 F.2d 154; General Metals Powder Co. v. S. K. Wellman Co., 6 Cir., 157 F.2d 505; Dominion Electric Corp. v. McGraw Electric Co., supra.

26. Watson v. Heil, 4 Cir., 192 F.2d 982.

27. Adler Sign Letter Co. v. Wagner Sign Service, Inc., 7 Cir., 112 F.2d 264; Application of Craige, 189 F.2d 620, 38 C. C.P.A., Patents, 1114.